1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


UNITED STATES OF AMERICA,

     Plaintiff,

-v-                              Case Number: 13-20568

DONALD RAYMOND CROFT,

     Defendant.

_____/


SENTENCING
BEFORE THE HONORABLE GERALD E. ROSEN
UNITED STATES DISTRICT JUDGE
100 U. S. Courthouse & Federal Building
231 West Lafayette Boulevard West
Detroit, Michigan 48226
TUESDAY, SEPTEMBER 16TH, 2014


**APPEARANCES:**

For the Plaintiff:       Matthew A. Roth, Assistant
                       United States Attorney


For the Defendant:       Lawrence B. Shulman, Esq.


To Obtain Certified Transcript, Contact:
JOAN L. MORGAN, OFFICIAL COURT REPORTER
734 812-2672


Proceedings recorded by mechanical stenography.
Transcript produced by computer-assisted transcription.

TUESDAY, SEPTEMBER 16TH, 2014                                    2
SENTENCING

1                Detroit, Michigan

2                Tuesday, September 16th, 2014

3                (At or about 2:20 p.m.)

4                          -- --- --

5                THE CLERK: The Court calls United States of

6      America versus Donald Croft, case number 13-20568.

7                THE COURT: Good afternoon.

8                Appearances, please.

9                MR. ROTH: Good afternoon, your Honor.

10               Matthew Roth, on behalf of the United States.

11               Mr. SHULMAN: Good afternoon, your Honor.

12               Lawrence Shulman, on behalf of Mr. Croft.

13               THE COURT: All right. This is a continuation of

14     the sentencing hearing from several weeks ago. The Court

15     after hearing from Mr. Roth and then Mr. Shulman, continued

16     the hearing to allow Mr. Shulman time to review the

17     photographic evidence at issue in the case.

18               Mr. Shulman has advised the Court that there was

19     a potential argument that the statutory mandatory minimum

20     of ten years might not be implicated and that the cross

21     reference might not be applicable here because of the

22     nature of the photographs. The Court wanted to give Mr.

23     Shulman and, of course, Mr. Croft, every opportunity to

24     review the photographs at issue and to make a determination

25     as to whether or not there was a foundation for those

TUESDAY, SEPTEMBER 16TH, 2014                                    3
SENTENCING

1    arguments.

2            The Court has received nothing from Mr. Shulman.

3    I have been advised, the clerk was advised by Mr. Roth that

4    Mr. Shulman did have the opportunity to review the

5    photographs in question. So I infer from that that Mr.

6    Shulman now agrees with the Government's position that the

7    cross reference applies.

8            Mr. SHULMAN: Your Honor, no, no, I don't. As a

9    matter of fact, it took a while to --

10            THE COURT: Well, Mr. Shulman, you were instructed

11    very clearly to file objections. I've received no

12    objections.

13            Mr. SHULMAN: I understand, your Honor.

14            THE COURT: Or brief.

15            Mr. SHULMAN: I understand, your Honor. That's

16    entirely my fault. It took some time to set up the review

17    with the Government. I did the review with the Government

18    on August 7th, which was a little more than a month after

19    we were here because it took some time for the Government

20    to go through and compile the universe of photographs.

21    I was over there on August 7th.

22            And, again -- entirely my fault. I've moved

23    offices. There was a problem with the date, but I do have

24    objections to one set of the evidence. We've had some

25    discussions about that, too --

13-20568    UNITED STATES OF AMERICA -V- CROFT

TUESDAY, SEPTEMBER 16TH, 2014                    4
SENTENCING

1            THE COURT: Mr. Shulman, you know, the dog ate my
2    homework excuses, we're long past that.

3            Mr. SHULMAN: I understand.

4            THE COURT: You know, we had a hearing that was
5    set for, what, a month and a half ago now or more. There
6    were no objections filed, not even a pleading indicating
7    that you might have an objection. Nothing filed with
8    Probation. Despite that, I gave you an opportunity to
9    review the evidence out of an abundance of caution to
10   review the evidence, and to file objections. Here we are
11   now, what, almost two months later, and I still haven't
12   gotten anything.

13           Mr. SHULMAN: Your Honor, if I may.

14           What had happened last time was we had talked
15   about having a universe of evidence and being on the same
16   page. As I indicated to the Court, there were thousands of
17   photographs that were compiled. We've gone through them
18   all. When we were here last time I talked about refining it
19   to a particular subset of evidence that the Government was
20   going to rely on. The Government made representation that
21   what they were compiling was a subset, they were reserving
22   the right to bring other evidence up at the sentencing,
23   too, but we were refining the set. That was the reason for
24   the last adjournment.

25           I believe the Court agreed that was justified,

13-20568   UNITED STATES OF AMERICA -V- CROFT

TUESDAY, SEPTEMBER 16TH, 2014                    5
SENTENCING

1    that it was a good reason being on the same page so we can

2    discuss evidence intelligently. Our position all along has

3    been that Mr. Croft admitted to you before the plea that

4    there were items that were on his computer that constitute

5    child pornography. Those items were downloaded from the

6    internet. That was the subject of the plea. We've always

7    indicated that he objected to the characterizations of

8    anything he took as far as photographs as being child

9    pornography and objected to their characterization.

10            THE COURT: So what do you want me to do, Mr.

11   Shulman? Do this on a fly with no evidence?

12            Mr. SHULMAN: No, your Honor.

13            THE COURT: There's been nothing submitted to me

14   whatsoever by you. I have the Government's position which

15   now has been adopted by the Probation Department and

16   incorporated into the Presentence Report.

17            MR. ROTH: The Government has -- and the

18   Government has exhibits that are here. We talked about

19   presenting some exhibits too.

20            THE COURT: Again, do you want me to do this on

21   the fly without having had a chance to prepare?

22            Mr. SHULMAN: No, your Honor. Not at all. In fact,

23   what I would ask for -- I had objections. I can file the

24   objections to the 38 pictures that I'm objecting to today.

25            THE COURT: Well, we're long past -- quite

13-20568   UNITED STATES OF AMERICA -V- CROFT

TUESDAY, SEPTEMBER 16TH, 2014                                    6
SENTENCING

1    candidly you were past the time to file objections at the

2    last sentencing hearing. I gave you an extension. You were

3    instructed to file objections and any supporting

4    documentation for those objections.

5              Mr. SHULMAN: The supporting documentation,

6    though, are photographs that are not in my possession

7    because they can't be --

8              THE COURT: You certainly could have referenced

9    those. Mr. Roth I'm sure would have permitted you to file

10   those in camera, perhaps under seal because of the nature

11   of the photographs.

12             Mr. SHULMAN: Well --

13             THE COURT: I'm at a loss, frankly, Mr. Shulman.

14   I'm at a loss.

15             Mr. SHULMAN: What we would ask --

16             THE COURT: The legal issue is clear.

17             Mr. SHULMAN: The legal issue is clear.

18             You know, the Government has prepared an exhibit

19   book with those exhibits.

20             Your Honor, I would ask that you wouldn't hold it

21   against my client. It's entirely --

22             THE COURT: The Court wouldn't hold anything

23   against the client, but I thought I had remedied that by

24   giving you the extension the last time, and making it clear

25   that you were to file objections after you had an

TUESDAY, SEPTEMBER 16TH, 2014                                    7
SENTENCING

1   opportunity to review the evidence.

2           Mr. SHULMAN: You did, your Honor. It's entirely

3   my fault.

4           THE COURT: You recognize the disadvantage you

5   place the Court in to say nothing of your client.

6           Mr. SHULMAN: I do, your Honor.

7           THE COURT: And the Government. The Government is

8   entitled to written objections to respond to.

9           Mr. SHULMAN: And our position has been clear,

10  we've talked about this back and forth with the Government.

11  I don't believe there's a debate as to what our position

12  is. It's just that the objection has always been to the

13  photographs that he's alleged to have taken. It was a

14  reason for the plea. It was a reason for discussions to try

15  to narrow the scope of evidence after the last hearing.

16  It's always been -- I agree --

17          THE COURT: So let me ask you a couple of

18  questions. Are you objecting to -- the Government propounds

19  four sets of photographs I believe involving four victims

20  who we will not name by name. On the basis of those four

21  sets of photographs for those victims the Government filed

22  objections indicating that it was the Government's position

23  that the cross reference in 2G2, I believe it was

24  subsection C applies. There was no response by you. Instead

25  at the sentencing hearing you asked for time to look at the

13-20568   UNITED STATES OF AMERICA -V- CROFT

TUESDAY, SEPTEMBER 16TH, 2014                           8
SENTENCING

1    photographs, understand what the universe of the

2    photographs was that the Government was relying on for

3    cross reference. The Probation Officer had accepted the

4    Government's position. So approximately a month and a

5    little more than a week ago you reviewed those photographs

6    as I understand it. What is the basis upon which you are

7    now alleging or arguing I should say that the cross

8    reference does not apply?

9              Mr. SHULMAN: Those photographs do not meet the

10   statutory definition under prohibited material under 2255A.

11             THE COURT: That they are not child pornography?

12             Mr. SHULMAN: Yes.

13             THE COURT: All of the photographs?

14             Mr. SHULMAN: Again, when we talked about being on

15   the same universe, the Government has identified 38 images

16   out of a total that they believe violate the statute, and

17   those 38 images we enter an objection to all 38 images.

18             THE COURT: I'm getting an uncomfortable feeling

19   here, Mr. Shulman, that the Court is being manipulated.

20             Mr. SHULMAN: I don't want to leave that

21   impression. Your Honor, it is entirely my fault. I'm not

22   trying to manipulate the Court and if the Court -- again, I

23   apologize. I would ask then that the Court adjourn -- I

24   don't want the Court to be unprepared. I would submit

25   anything by whatever date the Court orders --

13-20568    UNITED STATES OF AMERICA -V- CROFT

TUESDAY, SEPTEMBER 16TH, 2014                                9
SENTENCING

1          THE COURT: This is sort of the conversation we

2    had at the last hearing.

3          "Manipulated" I'm referring to something slightly

4    different. The manipulation I'm referring to is that I'm

5    concerned that you did not want to file a written record

6    because you have real concerns about the legal basis for

7    your argument. Instead you're throwing the ball in the

8    Court's court to make these determinations without a

9    written record.

10          Mr. SHULMAN: I don't want to leave that

11   impression. It's not true. I do have a record for that,

12   too. Not only would that not be fair -- I wouldn't ask the

13   Court to do that. And I apologize for that impression. I

14   would be perfectly happy to provide that basis. There is a

15   basis.

16          THE COURT: What evidence are you going to present

17   that these -- number one, first, if these 38 photographs

18   are not child pornography, is that what you're alleging?

19          Mr. SHULMAN: Yes.

20          THE COURT: How could your defendant have -- how

21   could Mr. Croft had pled guilty to the crime?

22          Mr. SHULMAN: He didn't plead guilty to that

23   crime. There were two counts here. The first count was

24   receipt. The second count was possession. There were items

25   on the computer that were downloaded from the internet.

1    We've admitted he submitted as the basis of his plea that

2    some of the images that were downloaded from the internet

3    by him were child pornography. He doesn't object to that.

4    He doesn't dispute that and that was the basis for --

5                THE COURT: And that's the possession.

6                Mr. SHULMAN: Yes, that's the possession. That was

7    the factual basis for the plea that he entered before the

8    Court, that items that he downloaded from the internet

9    constituted child pornography.

10               We indicated at the time of the plea, too, that

11   there was no indication, that what he took, the items he

12   was alleged to have photographed by himself that there's

13   been no admission whatsoever that those constitute child

14   pornography. It's always been our position that they

15   haven't. But as to the items that constituted the factual

16   basis for possession, there was a proper factual basis.

17   Those don't include images that he took. The basis for the

18   cross reference by the Government is images that he's

19   alleged to have taken that are alleged to be child

20   pornography which he's never made an admission to --

21               THE COURT: Well, let's make sure we're all

22   talking about the same cross reference. I think the cross

23   reference we're all referring to is 2G2.2(c)(1); correct?

24               Mr. SHULMAN: Yes.

25               THE COURT: "If the offense involved causing,

TUESDAY, SEPTEMBER 16TH, 2014                                11
SENTENCING

1    transporting, permitting or offering a minor to engage in
2    sexually explicit conduct for the purpose of producing a
3    visual depiction of such conduct apply 2G2.1 (Sexually
4    exploiting a minor by production of sexually explicit
5    visual or printed material...if the resulting offense level
6    is greater than that determined above."
7              The application note to that says,
8              "The cross reference is to be construed broadly
9    to include all instances where the offense involved
10   employing, using, persuading, inducing, enticing, coercing,
11   transporting, permitting a minor to engage in sexually
12   explicit conduct for the purpose of producing any visual
13   depiction of such conduct."
14             Then cross reference is applied; correct?
15             Mr. SHULMAN: Correct.
16             THE COURT: So you are saying that although he
17   possessed child pornography the photos that he took himself
18   were not pornographic, child pornography?
19             Mr. SHULMAN: Were not child pornography under the
20   statute, yes.
21             THE COURT: What evidence am I to look at other
22   than the photos?
23             Mr. SHULMAN: The photograph itself. Also the
24   other piece of evidence that we have because the cross
25   reference also talks about causing for the purpose, and

TUESDAY, SEPTEMBER 16TH, 2014                    12
SENTENCING

1    "for the purpose" implies to intent, if there was other

2    evidence that was seized from Mr. Croft's house including a

3    book that is permitted and is sold across the country here

4    by a photographer by the name of David Hamilton. The name

5    of the book is "The Age of Innocence."  We have a copy for

6    the Court's review. It's something that can be purchased in

7    Barnes & Nobles or anywhere else.

8            But the photographs themselves that are in this

9    book are of the nature that -- again, it's open that these

10   were sold is evidence of Mr. Croft's intent as well.

11           THE COURT: So what you're telling me is he was

12   trying to walk up to the line or his intent was to only

13   walk up to the line, established by this book or whatever

14   other material is out but not cross the line.

15           Mr. SHULMAN: I wouldn't even characterize it as a

16   line. There are photographs. They are photographs that by

17   reference he believed were proper and legal because they're

18   sold and sold through the mainstream of commerce. And his

19   photographs that he took were in the same vein.

20           THE COURT: So walk with me down this road.

21           Mr. SHULMAN: Yes.

22           THE COURT: That is, there are photographs that

23   are sold why would that excuse Mr. Croft's behavior if

24   those published photographs were considered to be child

25   pornography but for whatever reason were not prosecuted.

13-20568   UNITED STATES OF AMERICA -V- CROFT

TUESDAY, SEPTEMBER 16TH, 2014                13
SENTENCING

1             Mr. SHULMAN: There are two subsets to that
2    argument. The first subset is that the photographs the
3    Government is referencing weren't sold. In fact, there's
4    been admission that none of the photographs that Mr. Croft
5    was alleged to have sold constituted child pornography.
6    Most of these are images that appear either on a camera
7    card or they've been transferred to a computer. The part we
8    discussed the last time was the operation of Mr. Croft in
9    taking a series of digital photographs where hundreds of
10   pictures are taken on a camera card. Some of those are
11   downloaded. Some of those are refined for later sale. The
12   ones that were sold do not constitute child pornography.
13            The second part of the argument is that when it
14   comes to someone's intent on what --
15            THE COURT: But the cross reference doesn't appear
16   to require a sale.
17            Mr. SHULMAN: No, it doesn't appear to be part of
18   a sale. But, however, the Court is able to make findings
19   about -- again, this is for the purpose of producing. If
20   the Court finds that there's an open shutter and we can
21   establish that by the time frames on the photographs in
22   reference to other photographs, that a series of photos
23   were taken, and what the Government has extracted some
24   photographs from a series where they were definitely shot
25   over the course of a minute where there are ten photographs

13-20568   UNITED STATES OF AMERICA -V- CROFT

TUESDAY, SEPTEMBER 16TH, 2014                          14
SENTENCING

1    one photograph may been extracted by the Government. Where

2    there's an indication that this is child pornography. But,

3    again, those images weren't transferred to a computer. They

4    weren't sold. They weren't transferred to anybody else.

5    They simply either weren't deleted from the camera card, or

6    they were deleted but they were picked up in the carving

7    process on the forensic analysis of the computer card. But

8    it comes down to the intent of Mr. Croft when applying the

9    reference.

10            THE COURT: Well, it says,

11            "If the offense involved causing a minor to

12    engage in sexually explicit conduct.."

13            So the trigger as I see it for the cross

14    reference is the causing of the minor to engage in sexually

15    explicit conduct for the purpose of producing a visual

16    depiction.

17            Mr. SHULMAN: And our --

18            THE COURT: As long as he caused the minor to

19    engage in this conduct he triggers the cross reference. I'm

20    not sure that embedded within that was an intent.

21            Mr. SHULMAN: Our argument would be that the next

22    part of -- the last part of what the Court just read is the

23    triggering factor, too, for the purpose of producing a

24    visual depiction of such conduct meaning that was the

25    purpose. It was caused before that particular purpose.

13-20568    UNITED STATES OF AMERICA -V- CROFT

TUESDAY, SEPTEMBER 16TH, 2014                                15
SENTENCING

1          THE COURT: He produced it. He may not have wanted

2    those images specifically to be the images which were

3    ultimately the ones that he was going to capture and

4    market. But he certainly by virtue of the charge he

5    produced it, and he put these girls in these positions.

6          Mr. SHULMAN: Part of the argument, too, is that's

7    no different than if you were taking shots at a beach where

8    somebody is wearing a bathing suit and the bathing suit is

9    loose and you keep the shutter down and you produce and

10   somebody turns in a particular way where there's a shot

11   that nobody is going to use, but you're done. I don't know

12   if that constitutes a violation of this statute because,

13   again, our argument is that causing --

14         THE COURT: So let me ask this question, as I

15   recall from the plea hearings and the sentencing hearings

16   of the mothers of these young children they were paid. They

17   were paid by Mr. Croft.

18         Mr. SHULMAN: Yes.

19         THE COURT: What was the purpose of him paying

20   them? Usually when somebody comes to have their photographs

21   taken they pay the photographer, not vice versa.

22         Mr. SHULMAN: Well, it was paid through Mr. Croft.

23   But the mechanism was photographs were sold, proceeds were

24   received from the sale of the photographs. The proceeds

25   were divided between Mr. Croft, the photographer, and the

TUESDAY, SEPTEMBER 16TH, 2014                    16
SENTENCING

1    mom. And that's not an un-standard arrangement for people

2    whose photographs are being marketed.

3            Also the --

4            THE COURT: The phrase too cute by half comes to

5    mind.

6            Mr. SHULMAN: But that is the range of them, too.

7    And the Government's in possession of the contracts which

8    talk about that allegation of income. It's not un-standard

9    that somebody receive what amounts to a right --

10            THE COURT: Let me hear from the Government. Mr.

11    Roth?

12            MR. ROTH: Your Honor --

13            THE COURT: Understanding that both Mr. Roth and

14    the Court although certainly the Court more than Mr. Roth

15    are at a disadvantage here.

16            MR. ROTH: Your Honor, I think the Court was

17    exactly correct when the Court indicated -- talked about

18    the defendant going to a line. What this defendant did was

19    he was creating very sexualized child erotica to sell to

20    people that were interested in these materials on line. He

21    used the mothers and the kids to create this material. The

22    Court is absolutely right, he went right up to the line.

23    And during the course of going right up to the line he

24    crossed it. He crossed it multiple times. When he crossed

25    the line he created child pornography. And I can prove he

13-20568    UNITED STATES OF AMERICA -V- CROFT

TUESDAY, SEPTEMBER 16TH, 2014                                    17
SENTENCING

1    created child pornography by the exhibits that are in our

2    exhibit binder for this exact purpose.

3              THE COURT: So I'm going to have to look at these

4    photographs to make a determination apparently.

5              MR. ROTH: Our position is --

6              THE COURT: But is the question Mr. Shulman's

7    argument albeit not subject to a written objection as

8    required, Mr. Shulman's argument is that the depictions

9    were caused for the purpose of producing a visual

10   depiction. Mr. Shulman's argument is these were sort of,

11   you know, collateral images, not the precise image that he

12   wanted to use. And because of the shutter being opened it

13   captured provocative poses, but also captured poses that

14   went beyond provocative into pornography. That seems to be

15   his argument.

16             MR. ROTH: Yes, your Honor, that does seem to be

17   his argument.

18             My response to that is when you put a child in a

19   see-through shirt with no underwear on and start taking her

20   picture the inevitable consequence of that is that you're

21   going to capture her vagina and create child porn.

22             THE COURT: So it is the standard that he either

23   knew or should have known that invariably in taking these

24   photos he was going to be producing or causing to be

25   produced a visual depiction of child pornography?

13-20568    UNITED STATES OF AMERICA -V- CROFT

TUESDAY, SEPTEMBER 16TH, 2014                          18
SENTENCING

1           MR. ROTH: The Government's position is that the
2     evidence speaks for itself. And whether or not he had --
3     whether or not the standard is a specific intent or a
4     general intent the evidence shows that he specifically
5     intended to create these images. He did so by how he set
6     the scene.

7                There's a case that I can't remember off the top
8     of my head that references a situation when the Court is to
9     look at something to determine whether or not it's child
10    pornography. And the case cite doesn't come to mind, but
11    what the case says is that the Court can look at pictures
12    that are taken beforehand and the Court can look at
13    pictures that are taken afterwards to determine whether or
14    not the person that created the image intended to create
15    child porn.

16                The analogy I would give the Court is this: If
17    you take ten pictures of a child in a bath and one of those
18    ten pictures captures the genitalia of the child, I would
19    think that would show that the person did not necessarily
20    want to create child porn considering nine out of the ten
21    pictures are not of the genitalia. But when you take bath
22    pictures and you take -- and half of them are of the
23    genitalia and there's very little water in the bath, and
24    everything is set so that when you do take a picture and
25    you capture that genitalia that tells an entirely different

13-20568   UNITED STATES OF AMERICA -V- CROFT

TUESDAY, SEPTEMBER 16TH, 2014                    19
SENTENCING

1   story. And what he did is he put these kids in outfits that
2   the only thing that could happen if you're going to hold
3   the shutter open and have the kids pose is that you're
4   going to capture their genital area. That is the only
5   consequence. Anybody who looks at those pictures -- I don't
6   want to say anybody, but the Government's position is if
7   you look at those pictures, and the outfits, and the poses,
8   and what's going on. The obvious consequence of that
9   behavior is that these images would be created which means
10  he was bringing it right up to the line and letting them
11  cross the line. And he kept those that crossed the line,
12  and he sold the ones that maybe didn't cross the line
13  because Mr. Shulman right, we don't have evidence that he
14  sold the ones we consider child pornography. But what he
15  did was he set in motion and he let it go forward and he
16  captured these pictures. And if the Court looks at the
17  exhibits you'll see what they wore, how they were posed,
18  and that's just in Exhibit Number 1. I have Exhibit Number
19  2 which are the images that we characterize as child
20  erotica which are images that are right up to the line.
21  Some of the images in Exhibit 2 are parts of what's in
22  Exhibit 1. But you can see the progression, how you dress
23  them in these outfits, have them pose, have them move, you
24  sexualize them, and then invariably you're going to capture
25  the images that we call child pornography.

TUESDAY, SEPTEMBER 16TH, 2014                    20
SENTENCING

1              THE COURT: Is the case you're referring to the
2      Seventh Circuit case, U.S. versus Stone?

3              MR. ROTH: It is not. It's a Sixth Circuit case.

4              THE COURT: The Martin case? U.S. versus Martin?

5              MR. ROTH: It wouldn't be fair to guess at
6      the name. I can dig it up because I know it became an issue
7      in a case that I tried before Judge Lawson and he used that
8      particular case to determine -- that's the case where the
9      Sixth Circuit adopted the Dost factors where if the Court
10     looks at the Sixth Circuit Pattern Jury Instructions
11     there's a list of factors the court is to look at, or that
12     a jury is instructed on when trying to make a determination
13     if something is child pornography or not.

14             But our position is if the Court looks at the
15     images that the Government is alleging are child porn, I
16     don't have all of them here, I only brought a sample of
17     them, but even in the ones that the Government brought the
18     Court can make a finding that these images, number one, are
19     child pornography, and that anybody who's going to
20     photograph a child in these outfits, in these positions
21     doing these things would have to know. It would be
22     counterintuitive to think that you weren't going to capture
23     the genitalia during the course of photographing these
24     children in these outfits.

25             THE COURT: All right. Let me see them.

13-20568   UNITED STATES OF AMERICA -V- CROFT

TUESDAY, SEPTEMBER 16TH, 2014                    21
SENTENCING

1          MR. ROTH: May I approach, your Honor?

2          If I may for the record, Exhibit 1 are the ones

3     -- is a subset of what the Government believes are child

4     pornography. Exhibit 2 are what the Government believes to

5     be child erotica. And Exhibit 3 are the images the

6     Government believes the defendant downloaded from the

7     internet that constitute child pornography.

8          I have had a chance to show it to defense counsel

9     before we began the hearing.

10         THE COURT: You have or have not?

11         MR. ROTH: I have.

12         Not only have I shown him those exhibits, but

13    prior to the defendant's plea on at least two occasions he

14    had an opportunity to come to our office and review the

15    images. In addition to the evidence reviewed he conducted

16    with Inspector Christopher half of the photos.

17         THE COURT: So there are four sets of images as I

18    understand it. I'll just use the names which are not the

19    real names I assume that are referenced in the Presentence

20    Report at paragraph 20.

21         MR. ROTH: Yes, your Honor.

22         THE COURT: Are all four sets here?

23         MR. ROTH: I only printed up 24 images as an

24    example to the Court with respect to what we believe are

25    child porn. But I believe Exhibit 1 adequately captures the

13-20568    UNITED STATES OF AMERICA -V- CROFT

1     arguments made by the Government.

2                THE COURT: Mr. Roth, tell me again what Exhibit 2

3     is.

4                MR. ROTH: Exhibit 2 is what the Government would

5     classify as child erotica. Images that don't meet the

6     statutory definition of child pornography. And the reason

7     those are included in the exhibit book is to give the Court

8     context to which the items in Exhibit 1 were taken. So you

9     see the outfits that the kids were placed into, and the

10    kinds of images that the defendant was attempting to create

11    that were going to be sold on line.

12               When you look at a collection of the images that

13    were there, again, our argument is, it was inevitable and

14    when he put the kids in those images and photographed them,

15    he had to know that child pornography was going to

16    ultimately be the result.

17               As Mr. Shulman said when you hold the camera on

18    and you're taking picture after picture after picture and

19    the kids are wearing that -- those outfits, that are put in

20    those poses, it's inevitable what will come out of it.

21               THE COURT: Even some of the ones in Exhibit 2

22    look to me like they might fall into the definition.

23               MR. ROTH: And I would agree with that. And when

24    we selected the ones for prosecution we focused on it in a

25    very conservative approach to try to take the ones that

TUESDAY, SEPTEMBER 16TH, 2014                                23
SENTENCING

1    are, in our opinion, that were patently obvious.

2              But I would represent to the Court that Exhibit

3    1, every one of those individuals in there are minors. And

4    if the Court takes notes there are pictures of a child

5    standing in front of a mirror wearing fishnet-type outfits

6    where her vaginal region is clearly displayed.

7              This is not even a situation where a child is

8    moving around or posing. A child is just standing there

9    posing herself in front of a mirror. When you take that

10   picture there is no other outcome that you can create other

11   than capturing --

12             THE COURT: That would encompass several photos

13   under Exhibit 2.

14             MR. ROTH: And we have to focus also on what is

15   the definition of child pornography and that is the

16   lascivious exhibition of the genital and pubic area of a

17   child. And the case law says that even if a child is

18   wearing underwear you can still create child pornography if

19   the focus of that image is the vaginal region and it's

20   meant to be lascivious which is to arouse the sexual

21   interest of the person who created them or the person who

22   is to view them.

23             And when you look -- again, I focus on the

24   outfits because I think they tell the majority of the

25   story, you're only going to put a child in an outfit that

13-20568    UNITED STATES OF AMERICA -V- CROFT

TUESDAY, SEPTEMBER 16TH, 2014                                    24
SENTENCING

1   makes that child look like a prostitute or a hooker if you

2   want to create images that are highly sexualized and highly

3   lascivious.

4           THE COURT: I'd have to say that I think many of

5   the images in Exhibit 2 are either right at the line or

6   over the line. Several of them to me are -- I believe are

7   over the line in that definition.

8           MR. ROTH: And I would agree, but, again, we took

9   a conservative approach and focused on the ones that in our

10  mind were not near the line but way beyond the line. That's

11  why I said this defendant went up to the line because

12  that's what he was making off of. It sold when he could

13  bring this as close to the line as possible. But he knew it

14  also going to cross the line. And he continued to take the

15  pictures.

16          THE COURT: I would note that there are some

17  pictures that are both in Exhibit 1 and Exhibit 2.

18          MR. ROTH: There are, your Honor.

19          That was not intentional.

20          THE COURT: There needs to be a record on this so

21  that the Court of Appeals can review it. Unfortunately the

22  particular photographs have not identified themselves.

23          And Exhibit 3 is what?

24          MR. ROTH: Exhibit 3 are samples of images the

25  Government believes are child pornography that were

13-20568    UNITED STATES OF AMERICA -V- CROFT

TUESDAY, SEPTEMBER 16TH, 2014                    25
SENTENCING

1    downloaded from the internet that the defendant did not

2    create.

3            THE COURT: So these are ones he didn't create

4    and, therefore, would not have triggered a cross reference.

5            MR. ROTH: That's correct, your Honor.

6            And when defense counsel references that during

7    the plea he made admissions that he downloaded images that

8    constituted child pornography from the internet Exhibit 3

9    is what defense refers to.

10           THE COURT: Well, clearly the photographs just a

11   very glancing review of Exhibit 3, are more extreme and are

12   without any question pornography taken for the purpose of

13   lascivious pleasure.

14           MR. ROTH: If the Court wishes that the exhibit

15   book the Government created become part of the record we

16   can file an amended exhibit book with the particular file

17   names attached to the pictures so that it's a complete

18   exhibit for the purposes of following the case through the

19   record.

20           The Government produced --

21           THE COURT: Well, I think the Court of Appeals

22   would be at a disadvantage without the Court at least

23   denoting those images in Exhibit 1 and Exhibit 2 which

24   clearly are to the Court pornographic in the crossover of

25   lines.

13-20568    UNITED STATES OF AMERICA -V- CROFT

TUESDAY, SEPTEMBER 16TH, 2014                    26
SENTENCING

1           MR. ROTH: Can the Government make a motion to
2     admit Exhibits 1 and 2 --
3           THE COURT: I'll tell you what I'm going to do.
4     This has gone on too long. I am going to make this the
5     official record.
6           Let me ask this: There's no -- once the record is
7     created as to whether a photograph is or is not child
8     pornography the cross reference is triggered without any
9     numerical value as to the number of photographs; correct?
10          MR. ROTH: Correct. One photograph is sufficient
11    to trigger the --
12          THE COURT: Do you agree with that, Mr. Shulman?
13          Mr. SHULMAN: If the Court -- depending on how the
14    Court defines it, but, yes.
15          THE COURT: Do you agree with Mr. Roth's
16    definition of child pornography?
17          Mr. SHULMAN: It's the statutory definition, your
18    Honor. I don't agree --
19          THE COURT: Right.
20          Mr. SHULMAN: I agree that the statute controls.
21          THE COURT: Lascivious display of a minor's
22    genitalia.
23          Mr. SHULMAN: Yes.
24          THE COURT: Okay. With counsel's agreement I am
25    going to simply take Exhibit 1, go through it. Mark the

13-20568    UNITED STATES OF AMERICA -V- CROFT

1    pages, pages 1, 2, 3, 4, et cetera consecutively. And the

2    photographs as A, B, C starting in the upper left-hand

3    corner and proceeding clockwise. There are, I think, on

4    each page four photographs. So I will mark the pages one

5    through however many pages there are and the photographs as

6    A, B, C, D clockwise.

7            Page one, the upper left-hand corner, I think "A"

8    is questionable, maybe on the other side of the line. I

9    don't specifically find that there's been a specific

10   depiction of genitalia that is uncovered.

11           "B" on page one, there's certainly genitalia

12   revealed. It looks to me as though the child is removing

13   the cover to reveal the genitalia. That is child

14   pornography.

15           "C," again the child's genitalia vaginal area is

16   clearly revealed.

17           "D, the same.

18           So on page one, I find B, C and D, all of the

19   same child.

20           Page two, "A" left-hand corner, the vaginal area

21   is revealed and largely uncovered.

22           "B," is closer because of the position the leg.

23   The leg and the boot the child is wearing appears to be

24   covering or blocking the view of the vaginal area.

25           "C," again, the vaginal area is clear.

TUESDAY, SEPTEMBER 16TH, 2014                    28
SENTENCING

1           The same with "D".

2           So in page two, A, C, and D.

3           Page three, again all of the same child.

4           "A," that -- all of these are lascivious

5   displays. The child -- I should add as a -- preface this by

6   saying in each of these photographs the child is dressed up

7   in a lascivious outfit and the posture of the child and

8   actions of the child look to be clearly lascivious in

9   nature.

10          "B," I would also indicate as child pornography.

11          "C" and "D" are both within the definition.

12          So A, B, C and D on page three.

13          Page four, "A," the vaginal area is clearly

14  exposed. The child is lifting her leg and revealing clearly

15  her vaginal area.

16          "B," not so clearly. This looks more on the

17  nature of erotica.

18          "C," the child is wearing -- in both B and C, the

19  child is wearing a fishnet see through. I'm not sure that

20  the vaginal is clearly exposed.

21          For purposes of the record I'll say that is not

22  child pornography. It is certainly right up against the

23  line.

24          "D," the child has her legs up and her arms

25  across the legs in such a way that the vaginal area is

TUESDAY, SEPTEMBER 16TH, 2014                    29
SENTENCING

1   clearly exposed.

2            So on page four, A and D are clearly child

3   pornography.

4            Page five, "A," upper left-hand corner, the

5   vaginal area is largely covered. Again, right up against

6   the line. I would say it doesn't say quite meet the

7   statutory definition.

8        "B," again, right up against the line, but the vaginal

9   area is hidden by the pose that the child is in.

10           "C," again, the vaginal area here is not clearly

11  exposed.

12           "D," the vaginal area is clearly exposed though

13  the child has her hands down. The vaginal area is clearly

14  exposed.

15           So on page five only "D" would fall into the

16  definition of child pornography.

17           Finally, page six, "A" is a picture of a child

18  although an older child looks to be. Is this 14 year old

19  Kimmy?

20           MR. ROTH: Fourteen at the time it was taken, your

21  Honor, yes.

22           THE COURT: "A" depicts the child wearing fishnet

23  stockings. Clearly see through. The vaginal area is clearly

24  exposed.

25           Looking into the mirror and the mirror image in

TUESDAY, SEPTEMBER 16TH, 2014                    30
SENTENCING

1    "A" and "B" the vaginal area is clearly exposed. These do

2    not appear to be at least accidental or incidental.

3              "C," lower left-hand corner, images are clear

4    enough that the vaginal area is exposed.

5              "D," the child has her legs together. Largely --

6    again, right up against the line, but I can't say that it

7    has crossed the line because she has her legs completely

8    closed and together.

9              Looking at Exhibit 2 there are any number of

10   photos here that seem to have crossed the line. Some of

11   them are -- I'll just go through them quickly. This may be

12   a little more difficult.

13             On page one, I do not see any that cross the

14   line.

15             On page two, seems to include a couple photos on

16   Exhibit 1 that are either exactly the same photo or very

17   similar taken at the same time, specifically page six.

18   There are at least two photos here that cross the line. One

19   is on -- in Exhibit 1.

20             This is on page two of Exhibit 2, we will label

21   them "A," "B," and "C," again clockwise, "D," "E," "F,"

22   "G," "H" and "I".

23             Of these nine photographs two clearly cross the

24   line. "F" and "G" looks to be the same young girl that was

25   in Exhibit 1, page six.

13-20568    UNITED STATES OF AMERICA -V- CROFT

TUESDAY, SEPTEMBER 16TH, 2014                          31
SENTENCING

1          Page three, there are a couple that are right up

2    to the line. The children are wearing body paint so it's

3    difficult to tell. But I can't say that any of these photos

4    cross the line.

5          Page four, all lascivious poses no doubt, but,

6    again, taking a very conservative view I assume the

7    depiction of a young girl's breasts are not within the

8    definition?

9          MR. ROTH: Correct, your Honor.

10          THE COURT: I can't say any of the ones on page 4

11    cross the line.

12          Page five, Exhibit 2, again, they're all in

13    lascivious poses, but not clearly cross the line.

14          Page six -- on page six most of the photographs

15    depict young girls covered by body paint. The vaginal area

16    is not clearly visible although it's covered by paint. I

17    will say that none of those cross the line.

18          Page seven, none cross the line.

19          Page eight, again, these are all lascivious

20    photos most of young girls in a shower but -- or a bath,

21    but not clearly depicting the vaginal area.

22          Page nine, none of these photos cross the line.

23          Page ten, none of the photos cross the line.

24          Page 11 includes some of the same photos from

25    Exhibit 1 that I have felt do cross the line specifically

13-20568   UNITED STATES OF AMERICA -V- CROFT

TUESDAY, SEPTEMBER 16TH, 2014                          32
SENTENCING

1    on page 11, again, there are nine.  I'll mark them A, B, C,

2    D, E, F, G, H and I. They are either identical photos or

3    taken at the same time and bearing similar to and in these

4    page 11, "B" crosses the line. "C" is very close. "D" does

5    not. "E" does not. "F" clearly does cross the line. The

6    child's vaginal area is clearly exposed. Same with "G". "H"

7    close but perhaps not. "I" although this is a photo of the

8    child with her legs up and her arms across the legs, but

9    the vaginal area is exposed.

10          Turning to page 12, again, these look to be the

11    same young girl that was in the older -- the 14 year old

12    that we referenced was in Exhibit 1 on page six. These are

13    even more explicit, some of them. There are four photos and

14    clearly "A" crosses the line, "B" crosses the line, "C"

15    crosses the line. "D" is of another young girl although

16    close but does not cross the line.

17          Page 13, this picture is -- I believe it's the

18    same one that I already held crosses the line. On page 13

19    this would be "A" and is pornographic, but the copy that

20    I've got is not as clear as the one in Exhibit 1.

21          "B" crosses the line clearly. "C" clearly crosses

22    the line and "D" clearly crosses the line.

23          Page 14, "A" crosses the line. Clearly is

24    pornographic. "B" clearly is pornographic, pubic areas

25    completely displayed. "C" crosses the line. "D" crosses the

13-20568   UNITED STATES OF AMERICA -V- CROFT

TUESDAY, SEPTEMBER 16TH, 2014                          33
SENTENCING

1    line. All of these are over the line.

2                And, finally, on page 15, again, very close. "A"

3    crosses the line. There are only two photos. "B" is

4    depicting three children, only one of which the one in the

5    center shows the vaginal area and crosses the line.

6                All right. That's the record.

7                So, I found that many of these photos, in fact,

8    do fall within the definition of child pornography.

9                The question then is, two parts: Did the

10   defendant cause these? And under any common sense

11   definition of causing particularly the definitions given in

12   the application notes of -- first that the definition

13   should be construed broadly, first is applying the cross

14   reference, but even beyond that the helpful explanation is

15   that

16                "where the offense involved employing, using,

17   persuading, inducing, enticing, coercing, transporting,

18   permitting a minor to engage in sexually explicit conduct."

19                As I indicated all of the photos here are at the

20   very least lascivious, and beyond lascivious the ones that

21   I have demarked as child pornography are, in fact, sexually

22   explicit at least. And there's no question that Mr. Croft's

23   conduct here involved using, or persuading, or producing,

24   or enticing these children to engage in this sexually

25   explicit conduct.

13-20568    UNITED STATES OF AMERICA -V- CROFT

TUESDAY, SEPTEMBER 16TH, 2014                              34
SENTENCING

1              The question then becomes were these for the
2      purpose of producing a visual depiction of such conduct I
3      would have to be both literally and figuratively blind to
4      say that they did not. There is no way given the poses,
5      given the dress, given the conduct of these children that
6      were obviously enticed, and in the context of the full
7      relationship at issue here in which the mothers were paid
8      to bring these children and they were dressed up in this
9      lascivious garb I would have to be both, as I said,
10     literally and figuratively blind to say that there was not
11     a purpose of producing a visual depiction.
12             So whether to say there is a general intent
13     statute or a specific intent statute I find that the
14     defendant's conduct falls within U.S. Sentencing Guideline
15     2G2.2(c)(1). And, therefore, the cross reference is
16     triggered.
17             All right, that clears away those issues.
18             I believe that resolves the principal if not the
19     only objection to the Presentence Report in the Court's
20     interpretation here and, therefore, the 120 month --
21     because the cross reference applies, the 120 month
22     statutory term applies.
23             All right. Anything else on the Presentence
24     Report?
25             MR. ROTH: Your Honor, I would ask the Court to

13-20568   UNITED STATES OF AMERICA -V- CROFT

TUESDAY, SEPTEMBER 16TH, 2014                                35
SENTENCING

1    voir dire the defendant as to whether or not he had an

2    opportunity to review the report with his attorney, and if

3    he had any deletions, modifications --

4              THE COURT: I think we did that the last time, but

5    perhaps not.

6              MR. ROTH: I --

7              THE COURT: I think we did. Just on the

8    Presentence Report?

9              MR. ROTH: I may be wrong. I would defer to

10   anybody else that was there.

11             THE COURT: Well, out of an abundance of caution,

12   Mr. Shulman, have you reviewed the Presentence

13   Investigation Report with Mr. Croft?

14             Mr. SHULMAN: Yes, I have. We did it some time

15   ago.

16             THE COURT: Did Mr. Croft have an opportunity to

17   see the report?

18             Mr. SHULMAN: Yes.

19             THE COURT: And to read it?

20             Mr. SHULMAN: Yes.

21             THE COURT: Mr. Croft, would you please confirm

22   that?

23             THE DEFENDANT: I have.

24             MR. ROTH: Your Honor, I don't want to throw a

25   wrench in anything, but I don't believe we went on the

TUESDAY, SEPTEMBER 16TH, 2014                36
SENTENCING

1    record at all the last time we were here. I believe the

2    Court brought us into chambers and inquired as to the

3    status of Mr. Shulman's objections and filings. And the

4    Court adjourned it without going on the record. That's my

5    recollection.

6              THE COURT: My recollection is we were on the

7    record at least preliminarily as counsel spelled out the

8    concerns. I know we came out on the record, and I ordered

9    you to make the photographs available.

10             MR. ROTH: Right. I guess I should be more clear.

11   In a sentencing context where I don't believe the Court

12   initiated a sentencing hearing. I believe we addressed what

13   took place in chambers --

14             THE COURT: Oh, okay.

15             MR. ROTH: And only talked about the scheduling as

16   well as making it available, but I don't believe the Court

17   in its typical fashion initiated the beginning of the

18   sentencing hearing, and then went forward from that point.

19             THE COURT: All right. Mr. Shulman has confirmed

20   that he has reviewed the Presentence Report and reviewed it

21   with Mr. Croft. Are there any other matters concerning the

22   Presentence Investigation Report that the defense wants to

23   bring to the Court's attention at this time?

24             Mr. SHULMAN: No.

25             THE COURT: Let me hear from the Government.


13-20568    UNITED STATES OF AMERICA -V- CROFT

TUESDAY, SEPTEMBER 16TH, 2014                    37
SENTENCING

1          Anything else, Mr. Roth?

2                    MR. ROTH: No, your Honor.

3                    THE COURT: Yes, Ms. Collins?

4                    MS. COLLINS: As a matter of clarification, I'd

5     just like to mention that the statutory maximum penalty is

6     ten years. The guideline range for --

7                    THE COURT: I should have made that clear.

8                    The guideline range with the statutory maximum is

9     ten years. I said -- did I say statutory minimum?

10                   MS. COLLINS: Yes.

11                   THE COURT: The maximum is ten years. The

12    guideline range with the application of the cross reference

13    is 210 to 262 months. Therefore, the maximum that is

14    triggered here is ten years or 120 months.

15                   All right. Allocution starting with Mr. Shulman

16    on behalf of your client.

17                   Mr. SHULMAN: Thank you, your Honor.

18                   THE COURT: You can do it from there.

19                   Mr. SHULMAN: Your Honor, one of the things that's

20    apparent in this case, we keep on talking about a line, or

21    going up to the line in the photographs. Given that the

22    guidelines are advisory the question becomes even if the

23    cross reference applies and, again, we disagree with the

24    Court on that respectfully, but the question becomes should

25    that drive the sentencing here. When we talk about what the

                    13-20568    UNITED STATES OF AMERICA -V- CROFT

TUESDAY, SEPTEMBER 16TH, 2014                    38
SENTENCING

1    line is, the line comes from the statute itself. The line
2    is "lascivious" a lascivious display of the genitals. It's
3    not simply a display because nude photographs of someone
4    even who is -- can still be legal without crossing the
5    line. So something either violates a statute or doesn't or
6    if the statute can't be interpreted with certainly there's
7    some ambiguity.
8             THE COURT: Is this legal argument or is this
9    allocation?
10            Mr. SHULMAN: It's both because what I'm asking
11   the Court to do is take all these into account in
12   fashioning a sentence because it goes to where Mr. Croft's
13   mind is. It's a preface to that.
14            And what I'm getting at, your Honor, is that the
15   Court obviously disagrees with the Government in some
16   respects in defining what child pornography is given the
17   Court's findings on images.
18            THE COURT: Well, there's a paraphrase of Justice
19   Potter's words, a well worn adage that obscenity, in this
20   case, pornography, is in the eyes of the beholder.
21            Although I must tell you, Mr. Shulman, in many of
22   these depictions I don't think anybody would look at them
23   and not believe that they were intentionally lascivious and
24   pornography.
25            Mr. SHULMAN: And I would submit to you, too, that

13-20568   UNITED STATES OF AMERICA -V- CROFT

TUESDAY, SEPTEMBER 16TH, 2014                        39
SENTENCING

1   the images that the Court went through that were produced
2   by Mr. Croft, and that's Exhibit 1 which the Court was
3   looking at, are images that the Government has admitted
4   were not sold, they were not distributed. And most of those
5   images are images that came from the computer card. Some of
6   them were "carved" meaning that they had been deleted. So
7   these aren't images that were used for anything further.

8         And if it was Mr. Croft's intent to produce child
9   pornography for sale or for commercial factor with all due
10  respect if the Court determines that something is child
11  pornography that would probably give value to the item in
12  terms of a market. That isn't the case. And there is no
13  evidence that what Mr. Croft was engaged in or selling was
14  child pornography --

15        THE COURT: That's not required for the trigger of
16  the guidelines or the statute.

17        Mr. SHULMAN: I understand, your Honor. But in
18  terms of where somebody falls on the relative spectrum of
19  violating the statute even if the cross reference applies I
20  think the Court can take that into account because in
21  somebody who is affirmatively producing and selling child
22  pornography is different than somebody who may be producing
23  or incidentally producing but not passing along or even in
24  cases deleting the images after they're placed on the card.
25  I would submit that in this case, again, the shutter is

TUESDAY, SEPTEMBER 16TH, 2014                          40
SENTENCING

1    held down and there are a number of images that are

2    produced.

3            But in any event what the Court has to look at

4    when the Court is fashioning a sentence is -- in terms of

5    an appropriate sentence who you have before you. And if you

6    have somebody who is making an attempt to conform conduct

7    even though that conduct may cross the line in the Court's

8    opinion in some cases and not cross the line in other --

9            THE COURT: Let me ask you a question: Mr. Croft

10   was originally charged with production.

11           Mr. SHULMAN: Correct.

12           THE COURT: Correct?

13           Mr. SHULMAN: Correct.

14           THE COURT: That would have triggered potentially

15   substantially greater sentences including mandatory

16   minimums; correct?

17           Mr. SHULMAN: Absolutely.

18           THE COURT: So your argument that he didn't intend

19   to produce for sale child pornography even if I were to

20   accept it, which I have some question about it, but even if

21   I were to accept it, there's already been an accommodation

22   by having him plead only to the possession count which is

23   perhaps the most given everything else the most lenient of

24   counts, yes?

25           Mr. SHULMAN: Yes.

TUESDAY, SEPTEMBER 16TH, 2014                    41
SENTENCING

1           THE COURT: So hasn't Mr. Croft by pleading guilty
2    albeit without the benefit of a plea agreement and without
3    the concurrent obligations of a plea agreement hasn't he
4    already realized the benefits of the argument that you're
5    trying to make which is production?
6           Mr. SHULMAN: No, your Honor.
7           THE COURT: How?
8           Mr. SHULMAN: I believe this is the reason why:
9    The statutory maximum for what he's pled to is not to be
10   presumed to be a reasonable sentence here as well, and the
11   guidelines are simply advisory. So, again, if the Court is
12   going through the factors that it wants to go through one
13   of the things you're looking at is the conduct, is this
14   somebody who is egregious in his actions? And what I would
15   submit to you is, again, if somebody's trying to conform
16   their conduct somewhat to the law which in some ways the
17   Court says he did and came up to the line or it crossed one
18   of the things that the Court can look to in deciding
19   whether somebody has the intent to flout is what kind of
20   standards he's using to help make decisions?
21          THE COURT: I appreciate your argument. I
22   understand the phrase if you play with fire you're
23   inevitably going to get burned comes to mind.
24          Mr. Croft was clearly playing with fire here. He
25   dressed these girls in lascivious customs. He had them pose

13-20568   UNITED STATES OF AMERICA -V- CROFT

TUESDAY, SEPTEMBER 16TH, 2014                    42
SENTENCING

1    in lascivious and provocative ways. He paid the parent, he

2    paid the mothers. He was playing with fire. And he knew,

3    had to have known, that there was a reasonably good chance

4    that he was going to get burned by crossing the line.

5            Mr. SHULMAN: This is where I would like the Court

6    to consider it to: This is really the reason because this

7    gets to why somebody's belief of what the law is, making a

8    reasonable -- even if it differs from the Court or the

9    Government's approximation or definition of the law. The

10   reason why it's important is if there's any ambiguity, I

11   submit that lascivious has some ambiguity under the rule of

12   lenity --

13           THE COURT: Agreed, but hasn't he already achieved

14   the rule of lenity by pleading guilty to the much lesser

15   offense rather than production which in the Court's view

16   now with the findings the Court has made he has violated

17   that statute as well. Has he not achieved lenity --

18           Mr. SHULMAN: No, your Honor, and here's the

19   reason why, and this is what I would like the Court to

20   consider. Has he -- has he received a reduction from what

21   he was facing? Yes. But here's what I would like the Court

22   to consider: At the time that he was arrested there was a

23   book that was in his possession. A book which he has

24   indicated today was something that he modeled photographs

25   of, a book which is available at the local Barnes & Noble.

13-20568    UNITED STATES OF AMERICA -V- CROFT

1     You can go to Grosse Pointe and you buy it. You can go Ann

2     Arbor --

3           THE COURT: Well, because it's on the market and

4     because somebody else didn't get prosecuted for it doesn't

5     mean that Mr. Croft's conduct didn't -- is not child

6     pornography.

7           Mr. SHULMAN: But it's --

8           THE COURT: Those photographers are not before me.

9           Mr. SHULMAN: I understand. I'm not making the

10    argument that just because somebody else does something it

11    makes something legal. However, when we're talking about

12    the egregiousness of someone's actions what I'm arguing to

13    the Court is the fact that there's an external reference

14    point that's available and publicly available forms widely

15    anywhere, Amazon and bookstores, that's something that

16    should be taken into account by the Court in determining

17    what some of these actions are. If they have a belief

18    that's formed based on these things that out there, even if

19    the Court concludes that it's over the line it's still far

20    different than someone who's not trying to conform their

21    conduct with the law at all. It becomes a question of am I

22    on the right side of the line or not. And there may be a

23    belief which is wrong although recently held which doesn't

24    excuse conduct under the law, but really goes towards where

25    somebody's head is at. I have a copy of this book here,

TUESDAY, SEPTEMBER 16TH, 2014                    44
SENTENCING

1    too. I hope I wouldn't be prosecuted for bringing in a book

2    that is available anywhere. But if the Court --

3            THE COURT: I don't think you've produced the

4    book. You vested I suppose, but you didn't cause the -- you

5    didn't cause it. And it's being used here under a court

6    litigation context.

7            Mr. SHULMAN: May I mark it and tender it to the

8    Court? It's the same book that was taken into evidence by

9    the Government.

10           May I approach?

11           THE COURT: You may.

12           Anything else?

13           Mr. SHULMAN: I would ask the Court to take a look

14   at that because, again, I mean if there are -- they're

15   pictures of --

16           THE COURT: I take it you want me to look at the

17   -- I take it you want me to look at the ones that are

18   tagged?

19           Mr. SHULMAN: I think those are particularly

20   applicable, although, I think the entire book if the Court

21   leafs through it is relevant because this becomes the type

22   of pictures. If the Court goes through the same type of

23   analysis, the Court may very well conclude that some of

24   these images either go to the line, cross the line, maybe

25   neither. But that's where Mr. Croft is coming from.

TUESDAY, SEPTEMBER 16TH, 2014                          45
SENTENCING

1           Mr. Croft also took pains to protect his
2    copyright. In fact, the Government's aware of how he
3    watermarked different pictures, trying to protect his
4    intellectual property.
5           THE COURT: I'm looking at several of these
6    pictures using the standard that I used in going through. I
7    would find that some of them do cross the line. A few of
8    them, but not all of them that you have tabbed. But I'm not
9    sure what the relevance is.
10          Mr. SHULMAN: The relevance is, again, it's an
11   external reference book. It's an influence, too. And if
12   somebody says is the conduct crossing the line, if they
13   don't have --
14          THE COURT: You know, I'd have to say I'm not sure
15   when these pictures were taken. I wonder if these pictures
16   were taken before the statute. Some of them -- I don't know
17   that, but --
18          Mr. SHULMAN: They're sold after the statute, and
19   they're currently being sold as well.
20          THE COURT: But at the time they were taken and
21   produced and the conduct was caused may well have been
22   before the statute.
23          So, again, I'm not -- it's a clever argument.
24   It's a good lawyer's argument. I'm not sure what the
25   relevance of it is.

TUESDAY, SEPTEMBER 16TH, 2014                    46
SENTENCING

1           Mr. SHULMAN: Well, the relevance is there are
2   other books by authors like Jack Sturgis which were taken
3   after the statute.
4           Mr. SHULMAN: I am not a collector of this kind of
5   artwork. Certainly not expert in it.
6           But all of this to the Court is not really
7   relevant.
8           Mr. SHULMAN: The reason --
9           THE COURT: The Court is focused on Mr. Croft's
10  conduct.
11          Mr. SHULMAN: Right. And I'll keep it focused on
12  that, too.
13          When it comes to Mr. Croft's conduct, if somebody
14  is not -- we see these cases every day the Government, me,
15  the Court, but somebody who is not well versed in this like
16  Mr. Croft uses the external reference that he can. And when
17  it comes to his own conduct in taking photographs the use
18  in external standard even if the Court disagrees in some
19  respects to some of those images, I would submit that he
20  doesn't fall on the same end of the spectrum. He isn't
21  trying to produce the most egregious child pornography that
22  there is and try to market it.
23          THE COURT: I appreciate hearing your argument,
24  but looking at the Presentence Report in 2006, Mr. Croft
25  was arrested and charged in a criminal complaint in

13-20568   UNITED STATES OF AMERICA -V- CROFT

TUESDAY, SEPTEMBER 16TH, 2014                                47
SENTENCING

1    Kalamazoo with child pornography. Images and videos of
2    child pornography.

3              Mr. SHULMAN: And the case was dismissed, your
4    Honor.

5              THE COURT: And it was dismissed based on
6    constitutional infirmity in the search apparently.

7              Mr. SHULMAN: Well, that was a case that would
8    have been gone -- it would have gone to trial had there not
9    been the suppression.

10             THE COURT: I only take this, do you want me to
11   look outside the record for indications of intent? If I
12   look outside the record I see this is not Mr. Croft's first
13   experience with child pornography. If you really do want me
14   to look outside the record and, of course, prior criminal
15   conduct, even dismissed criminal conduct the Court may
16   consider in determining things like the egregious conduct
17   and the argument that you're making really has several
18   sides to it.

19             Mr. SHULMAN: I agree. If the Court were to
20   include his criminal -- again, what you have here is Mr.
21   Croft took thousands of pictures, and the Government has
22   said that up in the thousands, 38 are ones in their belief
23   cross the line. The subset of that is what the Court
24   believes.

25             In any event, what Mr. Croft did is -- in going

13-20568   UNITED STATES OF AMERICA -V- CROFT

TUESDAY, SEPTEMBER 16^TH^, 2014                    48
SENTENCING

1    on the internet he clearly downloaded images although they

2    weren't kept in an organized file at the same time he was

3    trying to go out and see where other images, came into

4    contact, he downloaded them. That's wrongful conduct.

5    Without the cross reference on that, the guidelines here

6    were 51 months I believe --

7              THE COURT: Fifty-seven to 71.

8              Mr. SHULMAN: Yes. And those guidelines -- the

9    guidelines may be more appropriate, but I would submit to

10   you that more is going on here, too, your Honor. In fact,

11   Mr. Croft does not have -- for the record, he is a father.

12   He's been separated from his daughter now for about two

13   years. He's very, very close to his daughter. And he has

14   gone through a whole lot of thinking about this situation.

15   And even if there was a line I think the correction here

16   and Mr. Croft would tell you the same, has had a profound

17   effect where he never wants to engage in any conduct that

18   might be questionable whether somebody can say he's at the

19   line, above the line, be near the line.

20             He was incarcerated in June of 2012. He's been

21   constantly in custody for the first time.

22             THE COURT: Should his experience in Kalamazoo in

23   2006, have not been an object lesson from when he escaped

24   unscathed because apparently the police made procedural

25   errors in seizing the evidence? Should that not have been

13-20568    UNITED STATES OF AMERICA -V- CROFT

TUESDAY, SEPTEMBER 16TH, 2014                    49
SENTENCING

1    an object lesson for him?

2            Mr. SHULMAN: Your Honor, again, it comes down to

3    lines I suppose, and different jurisdictions may have

4    different lines. But there are people who take photographs.

5    There's been a number of professional photographers

6    including Robert Maplethorpe and others whose works have

7    been exhibited in museums, and have been subject to

8    prosecution, the cases have been dismissed and they've

9    continued with their work. And they use external reference

10   points or other things to try to keep their conduct where

11   they think that the law is.

12           But in this particular case, Mr. Croft has no

13   desire to go anywhere near what anybody may think is the

14   line at all.

15           THE COURT: One could argue that he should have

16   learned that back in 2006 and 2007, and he dodged a bullet

17   there.

18           Mr. SHULMAN: Except the Court hasn't seen the

19   images from those particular --

20           THE COURT: True, true. I only have a description.

21           Mr. SHULMAN: And what the Court has is the charge

22   which is a state charge. But that requires the same type of

23   rifling through files and photographs, too, to determine

24   whether somebody is at the line or not.

25           But in any event, it's had a profound effect on

13-20568    UNITED STATES OF AMERICA -V- CROFT

TUESDAY, SEPTEMBER 16TH, 2014                    50
SENTENCING

1    him and with being incarcerated this entire time, being

2    away from his daughter. He has no interest in engaging in

3    any type of criminal behavior.

4              He's also been a person who, even if the Court

5    disagrees where he is has tried to moderate his conduct

6    even if he was wrong where that line was, and really knows

7    that he has to stay clear of any wrong in the future.

8              THE COURT: Thank you, Mr. Shulman.

9              Mr. Roth, allocution?

10             MR. ROTH: Yes, your Honor. Thank you.

11             Your Honor, first and foremost, the pictures

12   speak for themselves. And defense counsel asks the Court

13   who do you have before you? I would represent to the Court

14   you have a predator sitting before the Court. Somebody who

15   knew exactly what they were doing.

16             Defendant talks about -- defense counsel talks

17   about conformity and moderation of conduct. What you have

18   here is somebody that knew where the line was and exploited

19   that knowledge and created images as close to the line as

20   possible because that's what will sell on line.

21             As the Court knows because the Court has seen a

22   significant amount of child pornography cases, these images

23   are very valuable on line especially to people that are

24   interested in these things. What makes them even more

25   valuable is when you can create new materials which is one

13-20568   UNITED STATES OF AMERICA -V- CROFT

TUESDAY, SEPTEMBER 16TH, 2014                    51
SENTENCING

1    of the reasons why the cases that the Court sees that
2    involve production are so much -- the penalties are so much
3    greater not only because the children are physically
4    assaulted during the course of the production but because
5    it is the production of the images that creates more supply
6    and a demand is for those new images. So we have somebody
7    that educates themselves about what is or what is not child
8    pornography, creates new material that is as close to the
9    line as we can get, and then he turns around and sells it
10   on line. That's how he makes his money. And that's how he
11   pays the moms.

12           We also know that he's not only exploiting these
13   children by putting them in these outfits that are
14   reprehensible for a child as young as four years old to
15   wear, but he takes these moms that are more susceptible I
16   would submit to the Court that others to fall prey to what
17   his scheme is. The Court has taken a plea from four of the
18   moms, and I would submit to the Court that these are not
19   Rhodes scholars. These are individuals who have problems
20   with drugs, problems with employment, and maybe aren't
21   bright in any level whatsoever.

22           THE COURT: And were desperate for money.
23           MR. ROTH: And were desperate for money.
24           These are the individuals that are bringing their
25   children to this man. These are the women he recruits.

13-20568    UNITED STATES OF AMERICA -V- CROFT

TUESDAY, SEPTEMBER 16TH, 2014                    52
SENTENCING

1    These are the women that he pays, and that's why he gets

2    access to these kids to make these images to sell them on

3    line.

4              We also know more about the defendant from the

5    2006 case than I think the Court realizes. I have the

6    images from the 2006 Kalamazoo case here. Inspector

7    Christopher went to Kalamazoo and picked them up. I asked

8    Inspector Christopher to look at the images, what was found

9    in the computer. And if called to the stand he would

10   testify that the images in Exhibit 3 of the Government's

11   binder, the images that we represent were downloaded off

12   the internet that were child pornography that showed kids

13   engaged in oral sex, kids being penetrated by adults, those

14   are the images that Inspector Christopher would testify to

15   are the type of images that were on that computer in

16   Kalamazoo. And defense counsel says that case may have gone

17   to trial and they would have litigated it, but my

18   representations to the Court through Inspector Christopher

19   as this was child pornography just like it was in Exhibit

20   3.

21             THE COURT: Mr. Roth, the only probative value to

22   the sentence of the 2006-2007 Kalamazoo case is one of

23   whether or not the defendant learned his lesson, whether

24   he's capable of learning a lesson. He dodged a bullet

25   because of an imperfection apparently in the search and

13-20568   UNITED STATES OF AMERICA -V- CROFT

TUESDAY, SEPTEMBER 16ᵀᴴ, 2014                    53
SENTENCING

1   seizure conduct of the police. That's probative, but also
2   Mr. Shulman raised issues of intent from extrinsic evidence
3   outside the record of this case saying he was trying to
4   conform his conduct to a book which I'm not sure is very
5   relevant anyway. But the only point that I raise is that
6   this was not Mr. -- when Mr. Shulman was telling me that
7   Mr. Croft had learned his lesson that raised questions in
8   my mind because he had been engaged at least in conduct
9   that triggered his arrest and a charge. He was not
10  acquitted of that conduct. But the charge was simply
11  dismissed for a constitutional imperfection of the search.
12  That's the only thing -- what you tell me is fine, but I
13  think the probative value that I consider important related
14  to sentence is already established.
15          MR. ROTH: And I understand. I believe that
16  there's more to the Kalamazoo case than just what the Court
17  articulated. This indicates that back in 2006, he had
18  sexual attraction to young children, and he was interested
19  in child pornography.
20          It dilutes Mr. Shulman's argument that we have
21  somebody who's trying to act in conformity with the law. It
22  dilutes the argument that this is someone that just wanted
23  to make "art" for lack of a better term.
24          What we have here is someone who we know was
25  looking at graphic images of the sexual exploitation of

13-20568   UNITED STATES OF AMERICA -V- CROFT

TUESDAY, SEPTEMBER 16TH, 2014                    54
SENTENCING

1      children. And then we fast forward to this case and now he
2      is recruiting children and he's taking images that are
3      consistent with exploitative conduct. So my bringing this
4      up was not to try to muddy the waters, but to show that is
5      not a situation where anyone was trying to conform with
6      this law. This is someone who has an attraction to kids,
7      and he used his skill set as a photographer to create a
8      situation where he could get vulnerable mothers to bring
9      kids to him so he could dress them in these provocative and
10     sexual outfits that were wholly inappropriate, create these
11     extreme cases of child erotica, also create child
12     pornography, and then sell it on the internet.
13              THE COURT: And argue that he was not trying to
14     produce child pornography, and come forward with a
15     plausible argument, potentially a plausible argument.
16              MR. ROTH: I think that it was --
17              THE COURT: It's a clever scheme.
18              MR. ROTH: I think it was a scheme without
19     question.
20              And defense counsel is inaccurate when he
21     represents that the images in Exhibit 1 and 2 were carved.
22     All the images in Exhibit 1 and Exhibit 2 were on the
23     camera cards in the computer. There were carved images in
24     Exhibit 3, some of the child porn that was downloaded on
25     line.

13-20568   UNITED STATES OF AMERICA -V- CROFT

TUESDAY, SEPTEMBER 16TH, 2014                    55
SENTENCING

1              But if he had any semblance of wanting to really

2      create art, or if there's any legitimate reason to his

3      behavior that when he went through those pictures and he

4      was taking those pictures he would have either deleted

5      which he didn't do, delete those images of child

6      pornography, or he would have taken some steps to try and

7      limit what he would have captured.

8              I can certainly tell you as a father that when I

9      take pictures of my kids in the bath I make sure that I'm

10     taking appropriate pictures. I make sure that things that

11     shouldn't be captured are not captured. You're a

12     photographer who is trying to do something legitimate and

13     conform your acts, you put your child -- a child in a

14     fishnet top with no bottoms and tell them to sit in a chair

15     that is -- there's nothing about conformity with that. That

16     is for the expressed purpose of creating an image that

17     depicted that child's vagina.

18             And I think the 2006 case and the fact that he

19     had child pornography speaks to that and the images and the

20     conduct in this case speak to that.

21             THE COURT: There is another possibility. The

22     possibility is that taking Mr. Shulman's argument in its

23     best light he was intending to produce child erotica for

24     sale, and there was an incidental benefit to that of also

25     producing pornography for his own possession and

13-20568    UNITED STATES OF AMERICA -V- CROFT

1    consumption.

2                MR. ROTH: If that's even true.

3                THE COURT: If that's true, he still both violated

4    the statute and triggered the cross reference.

5                MR. ROTH: And he's still a predator, and he's

6    still exploiting the children. And he still had a scheme

7    where the only difference in defense counsel's scenario is

8    that he's recruiting these women to get access to their

9    kids for his own personal sexual gratification if that's

10   really what it is. Either way it's predatory. Either way

11   it's exploited. And either way he's a danger to children in

12   our community. And we know it's not a situation where, you

13   know, he's just grabbing kids off the street. He is

14   scheming to create situations where he has multiple kids,

15   as many as he can produce. He's making money out of it.

16   He's creating this material for himself, whatever it may

17   be. He presents a danger to the community. And the Court

18   hit the nail on the head when the Court asked whether or

19   not he's getting leniency by pleading to what he pled to.

20   And one of our goals when we look at these cases and we

21   charge these cases is to be consistent and fair as best as

22   possible.

23                To Mr. Croft's benefit he -- there's no evidence

24   that he touched any of the kids or molested any of the

25   kids. The Court knows if that was the case he would never

TUESDAY, SEPTEMBER 16TH, 2014                                57
SENTENCING

1    have gotten a deal. And although there is no evidence that

2    he distributed, it's simply that, we don't have evidence to

3    show he distributed. We have evidence that it was on his

4    camera cards.

5            So is he the number one offender that this Court

6    has seen, absolutely not. Is he public enemy number one,

7    no, he's not. And we took that into consideration and we

8    adjusted the charges to fit what we thought would be

9    appropriate in the grand scheme of these kinds of cases.

10   But it does not lessen the predatory conduct. It doesn't

11   lessen what he did to these children. And I think the Court

12   knows that although these kids think they're fancy models

13   right now at some point in the future when these kids learn

14   what really happened to them, they're going to go through

15   the rest of their life knowing that these images are out

16   there, and they are a click away from anybody that wants

17   them. And they don't know if it's their teachers, or their

18   friends or some stranger that they live next to is one day

19   going to come upon these images. And this is something

20   those kids are going to have live with for the rest of

21   their lives.

22           And during -- I have one more thing to say and

23   I'll sit down. During this investigation, Inspector

24   Christopher found a website dedicated to the child

25   referenced as "Alli." And you could click on and you get

1      more images, and you could subscribe to it, and you get

2      more images and so forth. When you look at the website you

3      see a big picture of Ms. Alli with her hands covering her

4      vaginal region and a ribbon going across her breasts. And

5      behind that image were 12 different images of her in

6      various sexual poses.

7              Now, Mr. Shulman said -- he argued to the Court

8      that he went through certain posturing with respect to his

9      images to prevent copyright infringement. But what really

10     happened is Inspector Christopher was trying to buy the

11     images and he wasn't able to buy them and he needed

12     passwords and code words for all kinds of stuff so he had

13     to have somebody else in the inspections, postal inspection

14     service buy them. And when that person bought it, they were

15     going to buy these images.

16             The point I'm making, your Honor, is that when he

17     sells these images he isn't protecting himself from

18     copyright infringement. What he's doing is he protecting

19     himself from law enforcement. And now these images are out

20     there, and people are making websites about these images.

21     And Mr. Shulman represented that Mr. Croft did not make

22     this image -- this website that Inspector Christopher found

23     which means these kids are going to be on line or somebody

24     is going to find these things. They're out there. They're

25     on the internet. And as the Court knows they will never be

13-20568    UNITED STATES OF AMERICA -V- CROFT

TUESDAY, SEPTEMBER 16TH, 2014                           59
SENTENCING

1    taken off.

2              So we have the predatory conduct and everything

3    we've argued. And we have ultimately the irreparable damage

4    to these children as well. We believe that taking all the

5    factors into consideration that the ten-year sentence in

6    this matter is appropriate.

7              THE COURT: Thank you.

8              Mr. Croft, do you wish to address the Court

9    before sentence is imposed?

10             THE DEFENDANT: Yes. May I stand?

11             THE COURT: You can address the Court from there.

12             Perhaps adjust the microphone, Mr. Shulman, can

13   you assist him?

14             Mr. SHULMAN: Sure.

15             THE COURT: That's fine. Good.

16             THE DEFENDANT: Your Honor, you're sitting there

17   with a book that is widely distributed. I did all I could

18   to try to abide by the law. I thought I had a good

19   understanding of the law, I've read the law. On many

20   occasions in the past I had met with the attorney to make

21   sure I was abiding the law.

22             Back in '06, when I went through that situation,

23   they actually went through my work and said they found no

24   illegal contraband in all the work that I had at that time.

25   Really nothing has changed with regard to the posing, or

13-20568    UNITED STATES OF AMERICA -V- CROFT

TUESDAY, SEPTEMBER 16TH, 2014                    60
SENTENCING

1     anything else that was back then. Just the faces and the
2     outfits.
3           Also at the time and, again, I'm just -- bearing
4     my soul with your Honor, the judge at that time also said
5     there was nothing in the statutes anywhere about wearing
6     provocative clothing.
7           My whole process with producing the images I
8     produced along with what I thought was legal in that book
9     up there, along with others with Sally Mann and Jacques
10    Sturgis, I thought if I kept the models clothed that I
11    wouldn't be in nearly as much hot water I guess you would
12    say in regards to things being viewed I guess you could
13    say.
14          Looking back now, I mean, yes, if I could take
15    back everything I would be a plumber or something along
16    that line. But here we are today and I guess I'm just
17    asking for mercy. I really never thought it would come to
18    this. I thought I was following the law.
19          You know, one thing I want to comment also in
20    regard to what the prosecutor mentioned about the jumping
21    through hoops and trying to avoid police or law
22    enforcement, once I realized that my work was being
23    infringed upon and traded out there I was doing all I could
24    to try to keep that from happening by doing the encryption
25    on the pictures, and making sure that before anybody did

13-20568    UNITED STATES OF AMERICA -V- CROFT

TUESDAY, SEPTEMBER 16TH, 2014                                   61
SENTENCING

1    take a look at any of my work that they actually had a real
2    physical address and a home and a place -- you know, if
3    anything ever came about I'd have some recourse because if
4    I found that so and so was trading or copyright --
5    infringed upon my rights, you know, I had a place that I
6    could -- I'd have some recourse. He said a couple different
7    times about jump through hoops and this might have been
8    during the bond hearing. I wasn't trying to create hoops. I
9    probably should have just went straight publication in the
10   books like I've seen at the stores that actually try to do
11   this on line. But even nowadays, your Honor, with google
12   and different companies like that a lot of books are being
13   put on line and, you know, copyright infringement really is
14   an issue when it comes to the internet.
15             In regards to the lewd and lascivious display of
16   genitalia I was under the impression that they had to
17   actually lewd and lasciviously display it. Simply seeing a
18   child nude to me is just a child nude. I mean, I'm a father
19   like apparently the prosecutor and I don't think anything
20   -- these are little kids. That's why when it comes to being
21   lascivious this, or lewd that, I just don't visualize a
22   child being in that mode because they're a child. I would
23   never think of a child --
24             THE COURT: So Mr. Croft, let me --
25             THE DEFENDANT: I'm sorry, your Honor.

13-20568   UNITED STATES OF AMERICA -V- CROFT

TUESDAY, SEPTEMBER 16TH, 2014                    62
SENTENCING

1          THE COURT: No, no. Your comments are fine.

2          I have a different concern. I'm wondering if

3     you're not in denial, and if all of this is not a very

4     complicated construct that you created in your own mind to

5     avoid confronting the reality what seems to be a problem.

6     That's a serious question I've got.

7          The images that I've looked at, are lewd. They

8     are lascivious. The girls are bearing their genitalia in

9     some of the pictures, not all of them. I'm just concerned

10    that you are in denial.

11         THE DEFENDANT: Well, your Honor, I know there are

12    a set of images that you've looked at that were pre-

13    production that were not -- were never used and they were

14    deleted and literally right from the camera being deleted.

15    I never looked at anything like that when I was shooting a

16    picture. I was paying attention to eyes and hand movement.

17    If I kept something I never really thought much about it

18    because I knew when I went through the images it would be

19    either deleted or it would be cropped at that moment, it

20    was never to be produced like that.

21         THE COURT: You walked right up to the line --

22         THE DEFENDANT: I'm not trying --

23         THE COURT: Unfortunately you went over it.

24         THE DEFENDANT: I'm not trying to be in denial.

25    I'm just trying to give you a professional opinion of what

TUESDAY, SEPTEMBER 16TH, 2014                           63
SENTENCING

1    I was trying to accomplish.

2           THE COURT: We're back to where we started which

3    was I said that it looked to me like you were walking a

4    very, very thin line and there were many photos that I saw

5    clearly crossed over the line. I can't peel back your brain

6    and look for why you did it, why you took these pictures.

7    Obviously you were attempting at least to go right up to

8    the line and maybe -- I can't determine that you intended

9    to go directly over the line, but you clearly went over the

10   line and you knew or should have known that you were going

11   over the line.

12          Some of those photos were very explicit. The

13   lascivious clothes. The provocative poses. The display of

14   the genitalia. It's not a comfortable thing to talk about

15   and it's sober and rare in the context of a courtroom, but

16   I can't deny what I saw.

17          My concern is, sir, that you're in denial either

18   as to your motivation or as to your intent, one of the two.

19   That's my concern.

20          I understand you've got all these arguments about

21   why you did it and what you thought, but the pictures

22   themselves, the victims themselves defeat those arguments.

23   That's all I can tell you.

24          THE DEFENDANT: And, again, your Honor --

25          THE COURT: If you were trying to fly close to the

13-20568   UNITED STATES OF AMERICA -V- CROFT

TUESDAY, SEPTEMBER 16TH, 2014                          64
SENTENCING

1    blame without getting burned that was reckless.

2              Is there anything else you would like to tell me?

3              THE DEFENDANT: I don't know what to say, your

4    Honor. I guess I'm sorry. I don't know -- I didn't mean to

5    hurt anybody.

6              THE COURT: Can you imagine or do you understand

7    the prosecutor's point about these young girls as they grow

8    up and they realize that these images are out there on the

9    internet, and can't be taken back? Did that occur to you?

10             I know you have a daughter. She's, what, 17 or 18

11   now? Would you have wanted her out there on the internet in

12   these exact poses that these young girls are in? I wouldn't

13   think so.

14             THE DEFENDANT: One minute, your Honor.

15             THE COURT: All right. Anything further before

16   sentence is imposed?

17             Mr. SHULMAN: No, your Honor.

18             THE COURT: Thank you.

19             Mr. Shulman, before sentence is imposed I will

20   just tell you I've accommodated you here because it is my

21   practice and as you pointed out it's appropriate that I did

22   not want to punish your client for your failure to comply

23   with the rules, or for your failure to do what you should

24   have done. This proceeding really did take a lot longer

25   than it would have been necessary. If I had fully

13-20568    UNITED STATES OF AMERICA -V- CROFT

TUESDAY, SEPTEMBER 16TH, 2014                            65
SENTENCING

1    apprehended the scope of your arguments, the nature of the

2    arguments, the nuisance nature of what you were arguing I

3    would have had pictures before me in chambers to review so

4    that I could have made these decisions without the

5    painstaking production that we went through here. I will

6    only say you're obviously a very skillful lawyer. You know

7    the law, and for your client made the very best arguments

8    that you could possibly make.

9            Mr. SHULMAN: I apologize to the Court.

10            THE COURT: But your obligations to the Court fell

11    far short, far short.

12            Mr. SHULMAN: I understand.

13            THE COURT: All right.

14            This is in the matter of the United States of

15    America versus Donald Croft, criminal docket number 13-

16    20568.

17            With respect to Count Two of the Superseding

18    Information here it is the judgment of this Court after

19    considering the sentencing guidelines and the factors

20    contained in the sentencing statute that the defendant be

21    committed to the custody of the Bureau of Prisons for a

22    term of 120 months.

23            I pause here to note that for all of the reasons

24    that we've discussed here on the record even though is the

25    statutory maximum the Court believes that this is, in fact,

1    a lenient sentence. The defendant could have been charged

2    with -- he was charged with, but could have been charged

3    with and gone to trial and been convicted of production

4    which would have incurred far greater sentences. So the

5    Court accepts his plea, but understands that even though

6    this is the statutory maximum it is in the larger context a

7    rather lenient sentence.

8              The Court recommends placement in a facility with

9    sex offender and mental health treatment.

10             Upon the defendant's release from custody the

11   defendant will be placed on supervised release for a term

12   of five years.

13             The Court will waive the imposition of a fine,

14   cost of incarceration, or cost of supervision due to the

15   defendant's lack of resources, financial resources.

16             The law, however, does require a special

17   assessment of $100 for each count of conviction. There is

18   one count of conviction, therefore, a special assessment of

19   $100 is due and owing.

20             Mandatory drug testing is ordered as the

21   defendant does have some history of substance abuse.

22             While on supervision the defendant will abide by

23   all of the standard conditions of supervised release which

24   have been adopted by this Court as well as the following

25   special conditions due to the nature of this offense.

TUESDAY, SEPTEMBER 16TH, 2014                                67
SENTENCING

1            The defendant will participate in a program

2    approved by his probation officer for substance abuse which

3    may include testing to determine if he has reverted to the

4    use of drugs or alcohol because as I noted the defendant

5    does have some history of substance abuse.

6            The defendant will participate in a program

7    approved by his probation officer for mental health

8    counseling if his probation officer deems that necessary.

9            The defendant will submit to a psychological or

10   psychiatric evaluation as directed by his probation officer

11   if necessary.

12           The defendant will comply with the requirements

13   of the Sex Offender Registration and Notification Act as

14   directed by his probation officer, the United States Bureau

15   of Prisons or any state sexual offender registration agency

16   in which he resides, or is a student, or was convicted of a

17   qualifying offense.

18           The defendant shall successfully complete any sex

19   offender diagnostic evaluations, treatment/counseling

20   programs as directed by his probation officer. Reports

21   pertaining to sex offender assessments, treatment, and

22   polygraph examinations shall be provided to his probation

23   officer. Based on the defendant's ability to pay if he has

24   the ability to pay he shall pay the costs of these

25   diagnostic evaluations, treatment or counseling programs,

13-20568    UNITED STATES OF AMERICA -V- CROFT

1    in an amount to be determined by his probation officer.

2         The defendant shall be required to submit to

3    periodic polygraph testing at the discretion of his

4    probation officer as a means to ensure compliance with the

5    requirements of supervision or treatment. No violation

6    proceedings will arise solely on the bases of a polygraph

7    examination. Based on the defendant's ability to pay, the

8    defendant shall pay the cost of the polygraph examination

9    in an amount determined by his probation officer.

10        The defendant shall not have contact, either

11   directly or indirectly, with any victim or witness in this

12   instant offense, unless approved by his probation officer.

13        The defendant shall not associate with minor

14   children under the age of 18, except in the presence of a

15   responsible adult who is aware of the nature of the

16   defendant's background and current offense, and who has

17   been approved by his probation officer. The defendant shall

18   not frequent places where children congregate on a regular

19   basis such as, but not limited to, school grounds,

20   playgrounds, child toy stores, video arcades, et cetera.

21        The defendant shall notify anyone he dates or

22   marries with a minor child under the age of 18 of his

23   conviction.

24        The defendant shall not produce, purchase, sell,

25   view, or possess images, in any form of medica or live

1    venue that depict pornography, sexually explicit conduct,

2    child erotica, or child nudity. The defendant shall not

3    patronize any place where such material or entertainment is

4    available.

5            The defendant shall provide his probation officer

6    with accurate information about all computer systems both

7    hardware and software, all passwords, and Internet Service

8    Providers, that the defendant has potential or reasonable

9    access to and abide by all rules of the United States

10   Probation Department's Computer Monitoring Program. The

11   defendant shall only access a computer approved by his

12   probation officer. The defendant shall consent to his

13   probation officer conducting periodic, unannounced

14   examinations of all computer systems, which may include

15   computer monitoring software at the defendant's expense.

16   For the purpose of accounting for all computers, hardware,

17   software and accessories, the defendant shall submit his or

18   her person, residence, computer and/or vehicle to a search

19   conducted by his probation officer at such a reasonable

20   times and manners as are provided. The defendant shall

21   inform any other residents that the premises and computers

22   may be subject to a search pursuant to this condition. The

23   defendant shall provide his probation officer with access

24   to any requested financial information including billing

25   records, (telephone, cable, internet, satellite, et

1    cetera.)

2        The defendant shall only access the internet through

3    one-internet-capable device. All other internet capable

4    devices, such as cellular phones and gaming consoles, shall

5    not the internet connected. The defendant is prohibited

6    from accessing any online computer service at any location

7    including, but not limited to public libraries, internet

8    cafes, and places of employment or education without his

9    probation officer's permission.

10            The defendant shall not own or possess a camera,

11    photographic device, or any other equipment, including

12    video recording equipment, without prior approval of his

13    probation officer.

14            The defendant shall have employment pre-approved

15    by his probation officer. If the defendant's employment

16    requires the use of a computer, the defendant shall notify

17    the employer of the nature of his conviction and this

18    notification must be confirmed by his probation officer.

19            The defendant shall not be employed at or

20    participate in any volunteer activities that involve

21    contact with minors under the age of 18, or adults with

22    disabilities, without prior approval of his probation

23    officer.

24            The defendant shall not rent a post office box or

25    storage unit without the prior approval of his probation

TUESDAY, SEPTEMBER 16TH, 2014                    71
SENTENCING

1    officer.

2              Mr. Croft, I have now accepted your plea, but you

3    did not plead guilty pursuant to a plea agreement.

4    Therefore, you have the right to appeal both your

5    conviction and your sentence. You have ten days to perfect

6    an appeal, and you are entitled to have counsel represent

7    you on appeal. If you request counsel I will be happy to

8    appoint one on your behalf. You may also represent yourself

9    if you wish to do so; however, I would strongly advise

10   against that. As we've seen in these proceedings today and

11   throughout it's a very complicated, sophisticated area of

12   the law, and you would be best served by having counsel

13   available rather than attempting to represent yourself.

14              All right. Sentence has now been imposed.

15              Is there any other matter including sentence that

16   counsel wish to address?

17              MR. ROTH: Does the Court wish the Government to

18   retain control of the exhibits or --

19              THE COURT: Yes.

20              MR. ROTH: Thank you, your Honor.

21              Mr. SHULMAN: No objections other than what's on

22   the record.

23              THE COURT: All right.

24              Thank you.

25              MR. ROTH: Thank you, your Honor.

13-20568   UNITED STATES OF AMERICA -V- CROFT

TUESDAY, SEPTEMBER 16TH, 2014                              72
SENTENCING

1              (Proceedings concluded, 4:10 p.m.)

2

3                           -- --- --

4

5                           CERTIFICATE

6

7         I, JOAN L. MORGAN, Official Court Reporter for the

8    United States District Court for the Eastern District of

9    Michigan, appointed pursuant to the provisions of Title 28,

10   United States Code, Section 753, do hereby certify that the

11   foregoing proceedings were had in the within entitled and

12   number cause of the date hereinbefore set forth, and I do

13   hereby certify that the foregoing transcript has been

14   prepared by me or under my direction.

15

16                          S:/ JOAN L. MORGAN, CSR

17                          Official Court Reporter

18                          Detroit, Michigan 48226

19

20

21

22

23

24

25   March 24th, 2015


              13-20568   UNITED STATES OF AMERICA -V- CROFT